John H. Galloway, Jr., J.
Defendant moves to suppress certain evidence (what appears to have been a set of burglar’s tools), and also to inspect the Grand Jury minutes or for dismissal of the indictment for insufficiency of legal evidence in support thereof, if the court reads the minutes. As a result of the events hereinafter related defendant was indicted for felonious possession of burglar’s tools in violation of section 408 of the Penal Law.
The facts before us, as disclosed on the preliminary hearing in the Mount Vernon Court of Special Sessions, are these: On July 10,1964 at about 1 o’clock in the afternoon, Samuel Lasky, an off-duty police officer of New York City, of 18 years’ experience, was at home in his apartment in Mount Vernon, when he heard a noise at his door, on the sixth floor of a multiple dwelling, housing 120 tenants served by elevators. He saw through the peephole of his door two men, one of them the defendant, Peters, tiptoeing out of an alcove on the sixth floor toward the stairway. He called police headquarters and reported the incident. He returned to his peephole and saw the two men still tiptoeing from the alcove toward the stairway. With his service gun in hand he slammed his door after him, ran down the hallway and then down the stairs down which Peters and the other man were running, and “ collared ” Peters between the fifth and fourth floors.
Lasky, who had never before seen the defendant “as a tenant or otherwise in the apartment building, asked Peters what he was doing in the building. He said he was looking for a girl friend; and, when asked for her name, he said she was a married woman and declined to state her name. Lasky then frisked Peters, looking for a weapon, he said. He “ felt something hard ” in Peters’ right pants pocket, which he said did not seem like a gun, but which “ could have been a knife ”, He took out of Peters’ pocket an opaque plastic envelope, the contents of which he examined, and found to consist of “ 6 *472 picks and 2 Allen wrenches with the short leg filed down to a screw-driver edge, and a tension bar ’ Lasky said that, on his experience as a police officer in the investigation of burglaries, the items in the envelope were adaptable to the commission of burglaries.
During all of this Lasky was not in uniform, did not have his badge on, did not tell Peters he was a police officer or that he, Peters, was under arrest — prior to opening the plastic envelope, which he ultimately turned over to the Mount Vernon Police, who had meanwhile arrived and taken the defendant into custody.
Defendant, who says he Avas visiting the premises to visit a friend, a lady friend, claims that after Lasky had collared him and pointed a revolver at him, and asked him what he was doing in the building, he started searching his person, and removed the plastic envelope from his possession. Peters urges that this constituted an unreasonable search and seizure and that the items so seized should be suppressed and excluded from evidence as being the fruits of an illegal search and seizure, since officer Lasky had no reason or probable cause to believe that a crime had been committed, or was being committed, or that Peters had committed or was committing an illegal act.
The District Attorney resists the motions on the ground that the frisk and the burglar’s tools which it produced were authorized by the recent decision of the Court of Appeals in People v. Rivera (14 N Y 2d 441). The District Attorney prefers not to rely for authorization of Lasky’s action on the recently enacted “ Stop and Frisk” statute (Code Grim. Pro., § 180-a added by L. 1964, ch. 86, eff. July 1, 1964), which provides:
“ 1. A police officer may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or any of the crimes specified in section five hundred fifty-two of this chapter, and may demand of him his name, address and an explanation of his actions.
“ 2. When a police officer has stopped a person for questioning pursuant to this section and reasonably suspects that he is in danger of life or limb, he may search such person for a dangerous weapon. If the police officer finds such a weapon or any other thing the possession of which may constitute a crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.”
*473 The motion to suppress thus raises these questions: (1) As to the right of a police officer to stop a person in a public place and question him for an explanation of his actions, under circumstances that would reasonably actuate investigation and inquiry; (2) as to the right of such officer to frisk the person being questioned as an incident to the inquiry; and (3) as to the admissibility of the evidence obtained by the “frisk”.
A police officer on “off-duty” status is nevertheless not relieved of his obligation as an officer to preserve the public peace and to protect the lives and property of the citizens of the public in general. How fortunate society is and has been that “off-duty” police officers have traditionally recognized this obligation has been demonstrated on innumerable occasions in many communities when such officers have risked and sacrificed their lives to frustrate the commission of crime or to bring the perpetrator of crime to justice.
We are unable to accept the view which tends to deprecate, if not altogether to reject, as rank suspicion or an educated guess unworthy of acceptance, the experienced police officer’s intuitive knowledge and appraisal of the appearances of criminal conduct or action, accomplished or in the course of accomplishment, as one of the factors in reasonable cause for police action. In our opinion officer Lasky was properly acting as a police officer on the occasion here involved.
In determining the validity of the police action in this case, we believe the prescribed standards of initial action and the grounds and scope of the invasion of the person questioned to be applied are those contained in section 180-a of the code, since the action here involved was subsequent to the effective date of the ‘ ‘ Stop and Frisk ’ ’ statute.
In our opinion a person moving in the public halls and stairways of a fairly large apartment house is a “ person abroad in a public place ” within the statute’s ambit. We also believe that the conduct of Peters and his companion, as observed by Lasky, under the circumstances described, furnished adequate grounds for Lasky to reasonably suspect that Peters was committing or had committed or was about to commit a felony or a crime specified in section 552 of the code. We think the testimony at the hearing does not require further laboring of this aspect of the matter, unless one is to believe that it is legitimately normal for a man to tiptoe about in the public hall of an apartment house while on a visit to his unidentified girl friend, and, when observed by another tenant, to rapidly descend by stairway in the presence of elevators. This is unacceptable to reason.
*474 Having the required reasonable suspicion of Peters, officer Lasky was entitled under the statute to stop him and. demand an explanation of his actions. Lasky’s action in “ collaring ” Peters to stop him as he moved rapidly down the stairs was allowable under the circumstances. And, of course, he was entitled to demand, as he did, that Peters explain his actions. We believe that Peters’ explanation was clearly unsatisfactory, and that under the circumstances Lasky’s action in frisking Peters for a dangerous weapon was reasonable, even though Lasky was himself armed.
During the course of the external frisking of Peters’ clothing the officer felt in his trouser pocket a hard object which, we believe, he reasonably suspected might be a weapon, such as a knife, even though admittedly it did not feel like a gun. He had not yet arrested Peters when he withdrew the packet containing the alleged burglar’s tools which we believe he properly opened in his search for a dangerous weapon. In view of the character of the implements in the envelope or packet, Lasky properly retained these items, the possession of which may have constituted a crime, and thereafter properly turned Peters over for arrest by the Mount Vernon Police there present.
We conclude that officer Lasky was authorized under section 180-a of the code to stop and question Peters and to frisk him, under the circumstances here shown, and to retain the product of the frisk; that the standards of his initial action and the grounds and scope of his subsequent action met the requirements of the statute; that the product of the frisk was therefore legally obtained; and that consequently that product constituting evidence of felonious possession of burglar’s tools is not subject to suppression and exclusion. We further conclude that the police action here involved was within the standards enunciated by Judge Bergan in People v. Rivera (14 N Y 2d 441, supra), and was authorized by the decision of the Court of Appeals in that case. The motion to suppress must be denied.
We now consider defendant’s motion for leave to inspect the Grand Jury minutes as a basis for dismissal of the indictment for insufficiency of legal evidence to sustain it. His argument is, of course, grounded wholly on the exclusion of the packet of alleged burglar’s tools, which would result in such insufficiency. In view of our denial of the requested suppression, the motion to inspect is denied.