OPINION OF THE COURT
Sheldon S. Levy, J.
I& drilling a hole through an outside wall of a building an entry within the meaning of the burglary statutes, or is it merely evidence of a breaking and an attempt to enter?
*853 No New York court appears to have been confronted with even a similar instrumentality problem in the law of burglary under the revised Penal Law, and this decision, accordingly, is one of first impression.
The seven defendants on trial and two others — colloquially known as “The Gang That Couldn’t Drill Straight” — were indicted, inter alia, for crimes of burglary in the third degree (first count) and attempted burglary in the third degree (second count), while acting in concert.
The charge is that, on January 26, 1981, at about 4:30 a.m., the two members of the group, not now on trial, drilled one hole through and one hole partially through the exterior storefront wall of the China Jade Company jewelry store on Canal Street in Manhattan. The holes were apparently purposefully placed on each side of a 3,000-pound safe, located directly within the premises and adjacent to the exterior wall.
Defendants Tragni and Barrios, long-time private garbage truck drivers in the Chinatown area, positioned their respective vehicles in front of the jewelry store and revved their motors in an attempt to shield the activity from public view and to mask the sounds of the drilling operation.
Defendant Mazzocchi acted as lookout, while the four remaining defendants (all helpers on the garbage trucks, and ultimately acquitted) stood on the sidewalk nearby.
The People theorized that, once the holes were drilled, something would be inserted through the openings and slipped around the safe so that it could be pulled through the wall and removed.
The defendants were aware that the Fifth Precinct station house of the New York City Police Department was around the corner. The defendants were not aware, however, that their activities were being continually monitored by members of that precinct’s anticrime unit, who apprehended all defendants when drilling of the second hole was abruptly terminated (probably because the defendants were alerted by a police radio communication).
At the conclusion of the People’s opening statement, all defendants moved to dismiss the burglary count for *854 legal insufficiency. The defendants argued that, since no defendant physically entered the building at any time, there could be no completed burglary. The People responded that at least one drill bit broke through the wall into the air space of the premises and that the entry contemplated by the burglary statutes was accomplished at that point. In the view of this court, neither contention has merit, and the instant determination is a result of that application.
Section. 140.20 of the Penal Law, as it applies to this case, reads as follows: “A person is guilty of burglary in the third degree when he knowingly enters * * * unlawfully in a building with intent to commit a crime therein.” The essence of this statute is unlawful and knowing entry with intent to commit some crime in the premises. To find guilt, all elements of a crime must be proven beyond a reasonable doubt, but entry is the active element that surely must be adequately demonstrated.
At common law, an entry was a key component of the crime of burglary. A breaking was another element of the crime, but a relatively insignificant one (see Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, art 140, p 9). Until 1967, however, the statutory law of New York tracked both of these elements (former Penal Law, §§ 400, 402-404). Thereafter, the requirement for a breaking was eliminated (Penal Law, §§ 140.20-140.30). Its demise provided no occasion for prolonged lamentation. It had usually created more problems than it solved (see People v Toland, 217 NY 187; People v Viola, 264 App Div 38; People v Krevoff, 11 AD2d 1053).
Nevertheless, when the breaking element for the crime of burglary was removed from the revised Penal Law, the Legislature deleted not only the definition of the word “break”, but also the detailed delineation of the word “enter”. The defining of the phrase “enter or remain unlawfully”, which was appended to the present Penal Law at that time (Penal Law, § 140.00, subd 5), was neither a substitute for nor a definition of the entry element of burglary. Instead, it was merely a particularized exposition of the “unlawful” aspect of the crime. Accordingly, *855 there presently remains no direct legislative guidance as to the meaning of the all-important word “enter”.
Moreover, no specific legislative history or drafters’ commentary reveals the reason for the obviously purposeful and simultaneous elimination of both the breaking and entering definitions, although the entry element is surely elevated in stature undér the Penal Law revision.
Previously, the definitional language had carefully, but restrictively, explained that “[e]nter” includes “the entrance of the offender into" such building or apartment, or the insertion therein of any part of his body or of any instrument or weapon held in his hand, and used, or intended to be used, to threaten or intimidate the inmates, or to detach or remove property” (former Penal Law, § 400). In the view of this court, the revisers became fully cognizant of the limiting nature of this language, particularly as it pertained to and seemingly confined the instrumentality rule to potential crimes of larceny (i.e., “any instrument * * * used, or intended to be used * * * to detach or remove propertyemphasis added).
Understandably, they were concerned that the retention of such a definition might serve to free, from warranted burglary charges, persons intending, by the use of some instrument, object or weapon, such crimes as murder, assault and arson. Furthermore, the drafters must have been equally anxious about the prospect of evolving statutory language broad enough both to prevent technical escapes from legislative intendment and to encompass within a single, comprehensible definition the myriad means of entry, presently limited only by the bounds of scientific advancement and human imagination.
Accordingly, the revisers opted for a total elimination of any — in their view — restrictive definition of the element of entry. However, if their actual aim in this regard was to permit the courts to fashion the meaning of entry on a case-by-case basis, then they were plainly misguided. Such a lack of predictability in a criminal statute can present a marked impediment to the prosecution in both evidence gathering and presentation and to the defense in attempting to guard against unknown or unanticipated proofs. The *856 true balance of justice would be sadly lacking were the Legislature to relegate its duties to the courts.
Instead, it must be assumed that the drafters had no such unseemly motive and that what they really envisioned was an adoption by the courts of common-law, common-usage and common-sense definitions of both bodily and instrumental entry.
However, no persuasive support appears for a claim that the legislative deletion of the prior entry explanation signaled any such radical departures from previously accepted definitional standards as either the defendants or the People suggest.
It is true that our State’s highest court has twice indicated that a defendant was correctly charged only with attempted burglary rather than with the completed crime where he did not physically gain entrance to the premises involved (see People v Gilligan, 42 NY2d 969; People v Henderson, 41 NY2d 233, 236; see, also, People v Campbell, 54 AD2d 777).
It seems clear, however, that the statements contained in these cases were meant to pertain to and comment upon only the factual patterns evidenced therein. Such gratis dictum obviously was not designed to constitute an unusually restrictive interpretation of an entry for purposes of a burglary. The defendants are in error to suggest that physical presence on the premises is the sole criterion for burglarious entry.
Nor, on the other hand, does the present statutory lack of a definition of the word “enters” imply, as the People might argue, that the meaning now has been stretched beyond all recognition and intendment to include also acts of “breaking”. The genuine legislative plan would certainly appear to run a more moderate and more logical course.
In this regard, a careful perusal of the varied statutes and judicial pronouncements of sister States on the subject of breaking and/or entering reveals a hodgepodge of legal platitudes, of confusing technicalities, of erroneous common-law recollections and of strained statutory interpretations which merely buttress the adage that “hard cases make bad law.” Nevertheless, there at least emerges a *857 consensus of opinion concerning common standards, which is supported by leading writers and commentators in the criminal law field.
Initially, and obviously, full bodily entry within a building is sufficient to prove prima facie the entering element. Moreover, the penetration of air space in the premises by any portion of the body, whether by a hand, foot, finger, head or shoulder, is equally adequate as a demonstration of entry.
Accordingly, a hand reaching inside an open window to unlatch a lock; a foot kicking in a door panel; a finger groping for a ring through a hole; or a head peering inside an open door to see if the way is clear, are all examples of the act of entry. When any part of the body passes the threshold, an entry is accomplished, no matter how slight the invasion or the reason therefor. With a bodily intrusion, it makes no difference whether it was intended actually to effect a crime within the premises or whether it was intended merely to aid in gaining entrance, by a breaking or otherwise, so that a crime could be committed therein.
The instrumentality criterion of burglary, however, is different. When some instrument is used in connection with a criminal purpose in a building, it is absolutely essential — for an entry to take place — that the instrument or weapon employed is one actually being used, or intended to be used, to commit a crime within.
Therefore, the splintering of a door with a bullet intended to kill or to injure someone inside (or even the violation of air space by a round propelled through an open door for the same purpose); the cracking of a storefront window with a fishing pole, which can then be used to hook onto a fur piece or other object therein; the shattering of a wall with a magnetized iron ball intended thereafter to attract and to steal metal objects in the premises; and the breaking of a pane of glass with a wooden torch, which can then be tossed inside to ignite combustible material, are all examples of the employment of an instrument or weapon to accomplish some crime in a building.
Moreover, even an object which only makes a hole can be an instrumentality of entry where it is punched into a granary wall or an oil tank to permit the contents to flow *858 out (see, "e.g., Walker v State, 63 Ala 49; State v Crawford, 8 ND 539; Bass v State, 126 Tex Cr Rep 170).
In all events, in each of the situations aforesaid, whether by body or instrument; whether the object crime is consummated or not; and whether other elements of the crime of burglary are ultimately proven, at least the element of entry will have been sufficiently shown.
However, the use of a weapon or instrument solely to create or enlarge an opening or to facilitate an entrance into a building, cannot be designated an entering into the building or an entry within the commonly accepted legal definition. At most, such an instrumental utilization would constitute a breaking.
Accordingly, no entry is effected when a bullet or rock is used merely to smash a lock or break open a window; a plastic credit card is slipped into a crevice to disengage a door spring; an antitank rocket is propelled only to make an opening in a wall; a crowbar is manipulated to pry open a door; or a glass cutter and adhesive are employed to remove a window pane. In point of fact, these are illustrations of a breaking, and not of an entry.
From the foregoing recital, some usual threads, some normal trends and some basic rules are readily discernible.
Although the Legislature, in the enactment of the revised Penal Law, has failed thus far to make any official or explicit statement concerning the perimeters of an entry under the burglary statutes, a fair, predictable and workable definition, which accords with common custom, usual explanation and practical judgment, may be stated as follows:
Any penetration of air space in a building — no matter how slight — by a person; by any part of his body; or by any instrument or weapon being used, or intended to be used, in the commission of a crime, constitutes an entering.
Under this suggested simple, but hopefully all-encompassing, definition and judicial interpretation, mere acts of breaking by an instrument or weapon not intended to be used in the actual perpetration of the contemplated crime will not suffice to sustain an entry; but evidence of any breaking may well be employed as an aid in proving both *859 the element of entry and of criminal intent. However, such proof alone cannot substitute — in the crime of burglary — for independent and substantial evidence of an entry into the premises by the defendant or by someone acting in concert with him.
Moreover, the use of a weapon or instrument solely to effect a breaking to gain entrance to a building, so that a defendant can then commit some crime therein, clearly is not the entering envisioned by the burglary statutes, but it may indeed serve as an adequate act to buttress an attempted burglary charge (see Penal Law, § 110.00).
Applying these guidelines and the proposed definition to the case at bar, it is manifest that, as a matter of law and logic, the People will never be able to prove the element of entry from the stated facts and all reasonably drawn inferences.
No defendant was observed at any time inside the jewelry store. No part of the body of any defendant was seen within the building. Nor could any such occurrence be inferred from any evidence to be adduced.
Moreover, the drills and drill bits, employed by the two persons acting in concert with the defendants on trial to make holes in the storefront and to penetrate the air space therein, were instruments to be used solely for the purpose of effecting a break in the premises. Since the position of the holes on each side of the 3,000-pound safe demonstrated a future intention to pass something through, these openings to effect a removal of the safe, it is perfectly plain that the drills and bits alone could serve no such purpose.
The intrusion of these instruments, therefore, even into the interior air space of the building, is not the entry contemplated by the statutes. Since a prime element of the crime will be missing in the proof, the burglary count is not legally sustainable.
However, even where the legal insufficiency of a count in an indictment is evident upon the People’s opening statement, should such a charge be automatically dismissed upon the motion of a defendant? Parenthetically, this interesting, but unraised, question deserves a brief discussion.
*860 Ordinarily, a court should be wary of dismissing any count of an indictment based solely upon the People’s opening statement. This is so, as our Court of Appeals recently observed, unless it clearly appears by “an affirmative showing that the prosecutor is not entitled to a conviction because the charge cannot be sustained under any view of the evidence and then only after the prosecutor has been given an opportunity to correct the deficiency in his opening” (People v Kurtz, 51 NY2d 380, 385, cert den 451 US 911).
In the present case, admittedly, the evidence to be adduced by the People on the burglary count will be only as was fairly detailed by the Assistant District Attorney in his opening statement and as set forth previously, in pertinent part, by the court. No request was made by the prosecutor to correct, supplement or amend any factual statement or details alleged.
Under such circumstances, the court has not only a right, but a duty, to all parties immediately to strike any legally deficient count from the indictment and to inform the jury — with appropriate admonitions against speculation as to the reasons therefor — of its action. Such conduct on the part of the court is fully warranted to avoid unnecessary confusion on the part of the jurors; the contest of nonviable issues; and a burdening of the record with irrelevant proofs.
Nor, in this instance, can any analogy be drawn that the burglary charge cannot be dismissed because a lesser included count — attempt burglary in the third degree — is viable (see CPL 1.20, subd 37; 290.10, subd 1). In the present indictment, the People — perhaps in anticipation of this very decision — already have charged the defendants in the second count of the indictment with that precise criminal attempt.
Accordingly, and for all of the reasons stated, the motion of all defendants to dismiss for legal insufficiency the count of burglary in the third degree is, in all respects, granted.