Francis T. Murphy, J.
The defendants move to suppress tangible evidence and admissions allegedly obtained from them by the police during the course of a raid made without a warrant upon residential premises located in Bronx County.
The court finds that several law-enforcement officers met at a Bronx cafeteria and then proceeded to a six-story multiple dwelling located at 827 Union Avenue, Bronx, wherein the residential apartment 4C-, the subject premises of this motion, is located. The entrance gate to the front courtyard was open, as was the door leading to the lobby. Two officers went upstairs and positioned themselves between the fourth and fifth landing of the building. Two other officers took the elevator to the top floor and walked up a flight of stairs to the roof. The roof door was latched by a hook and eye. They opened it, went onto the roof and then went down the fire escape to the fourth floor. They were now outside the closed window of apartment 4Gr. No shade was on the window. It was covered instead with a piece of cloth which had an open area of three to five inches at the top. The window itself was set back about eight inches from the outside wall of the building. There were accordion-type bars across the outside of the window which they touched while making their observations. The officers alternated looking through the open area at the upper left hand portion of the window. The light in the kitchen was on, and they each testified they could see glassine envelopes, white powder, rubber bands and scotch tape on the kitchen table. Three women were in the kitchen, one of whom allegedly commented that defendant Terrell suspected the girls of removing" heroin from the apartment. Convinced that what they saw was an operation for the “ bagging ” of heroin, they went back to the fire escape and across the roof. They opened the door leading from the roof to the hallway which they had closed behind them on entering the roof. They then went down the stairs to the fourth floor landing and told the waiting *34 officers that the plant- was in operation and to go in. With gun drawn one of the agents turned the door knob and the door opened (apparently from within). When the apartment door was opened they saw nothing to indicate any illegal activity. They proceeded immediately to the bedroom in the rear of the apartment.
The defense called the superintendent of the building and his wife. The substance of their testimony was that there is a burglar alarm system in the building; that the system is activated by cracking or opening the door leading to the roof; that he and his wife were in their apartment on the evening in question and the alarm which rings in their apartment never sounded. In addition they testified that, once the door leading to the roof was closed, the only exit from the roof was down the fire escape, since the roof door had no handle on the outside. Pictures demonstrating the alarm system and the door without handle were introduced in evidence. In addition, one of the defense counsel testified that he was six feet one inch tall; [the tallest of the agents who allegedly made the observation was 5 feet 10 inches by his testimony]; that he had stood on the fire escape in question and that it was not possible to have looked in the upper left hand portion of the window down into the kitchen. That standing erect his eye level was at least one foot below the indicated area of observation. Pictures of the witness on the fire escape seeking to demonstrate this were also placed in evidence.
The credible evidence supports the People’s version of the activities of the police ■ on April 5, 1966, notwithstanding the physical evidence produced by defendants which indicates the police officers were indeed understating in testifying to their agility.
The defendants contend that the contraband seized and admissions obtained resulted from an illegal trespass within the curtilage of a residential apartment which made the resulting search, seizure and ultimate arrests violative of their constitutional rights as provided for in the Fourth Amendment of the Constitution of the United States. It is further argued that the police, in obtaining the alleged admissions, failed to comply with the mandatory constitutional warnings as set forth by the 'United States Supreme Court in Miranda v. Arizona (384 U. S. 436).
The gravamen of the People’s argument is that there was no physical encroachment into a constitutionally protected area; that the police had probable cause to make the arrest and incidental search without a warrant. The People, in their brief, make clear that the basis of the probable cause upon which the *35 search and resulting arrest were predicated was obtained by the officers’ observations from the fire escape into the kitchen window. With respect to the alleged admissions and written statement, the People urge that there was no custodial interrogation of the defendants within the intendment of the Miranda ease, and that the statements were made voluntarily.
The first question to be determined then is whether or not an observation made surreptitiously from a fire escape into a residential apartment is a trespass into a constitutionally protected area within the intendment of the Fourth Amendment of the Unied States Constitution. Said Amendment reads as follows : “ The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”
Curtilage has a well-defined legal meaning. “In its most comprehensive and proper legal signification it includes all that space of ground and buildings thereon which is usually enclosed within the general fence, immediately surrounding a principal messuage, outbuildings, and yard, closely adjoining to a dwelling house”. (25 C. J. S. p. 82).
In support of their argument that no trespass has taken place, the People rely heavily on the case of People v. Sperber (40 Misc 2d 13, affd. 15 N Y 2d 566). In that case, personal investigation and surveillance by a police officer suggested illegal gambling activities in a candy store. The police officer placed a ladder on the roof of a building about two feet away from the structure in which the store was located. The base of the ladder was on the roof of the adjacent building, and the top of it leaned against the outer wall of the store. From his position on the ladder the policeman was able to hear and observe sufficient evidence relative to gambling. He then entered the store and made the arrest and incidental search.
By a 4 to 3 decision, defendants’ argument that the observations were made pursuant to a trespass and unlawful entry was rejected by the court, which affirmed the lower court decision. Examination of the lower court decision (40 Misc 2d 13, supra) reveals, however, that the decision was predicated upon facts dissimilar to the case at har.
The court notes first, that in the instant case, unlike the Sperber case (supra), the record is barren as to any prior surveillance, or investigation by the police which would have compelled them to continue their observations in a surreptitious *36 manner as from the fire escape. There is nothing in the record which suggests anything suspicious about the subject apartment or its occupants until the observations were allegedly made on the fire escape. The fire escape and window in question were part of residential premises. This is unlike the business space with which Sperber is concerned. Second, in the Sperber ease the policeman was standing in an area coneededly not part of the building grounds into which his observations were made. He was thus outside the curtilage of the subject premises and that area was not entitled to the protection of the Fourth Amendment. However, the fire escape from which the instant observations were made is appurtenant to the building and clearly within the grounds belonging to the building in which the apartment is located.
Third, in the Sperber case it was held that there was no physical intrusion sufficient to create a trespass, since the ladder merely rested against the wall. In the instant case, the uncontroverted evidence is that without reason, uninvited, and without a warrant, they entered the building, went up the elevator and unlatched a hook and eye which had closed the door separating the hallway from the roof. They then went across the roof, down the fire escape and looked into the window which was set back about eight inches inside the building wall; and that they touched the window bars directly in front of the window while doing so. Thus, the court finds Sperber inapposite to the case at bar.
The People next urge that when a residential apartment is used for crime, that it loses the protection afforded it under the Fourth Amendment and must instead be regarded in the same vein as commercial or business space which is not afforded the full protection of the Fourth Amendment. In support of this proposition the case of Lewis v. United States (385 U. S. 206), decided December 12, 1966, is cited. In that case, a narcotics dealer selling from his residential apartment invited a prospective customer with whom he had done business and who was in truth and fact a Federal agent, into his apartment. A sale of narcotics was consummated therein. The court held that in such a situation where the agent had been invited on the premises to conclude an illegal commercial transaction, that the apartment was now to be treated as business space, not entitled to the full shield of the Fourth Amendment. In the instant ease, however, there is nothing to suggest that the “ raiding ” party was invited to the premises.
Moreover, the brief filed by the Government in the Lewis case, as reflected in the court’s decision (p. 212) stated: “In short *37 this case involves the exercise of no governmental power to intrude upon protected premises; the visitor was invited and willingly admitted by the suspect. It concerns no design on the part of the government agent to observe or hear what was happening in the privacy of a home; the suspect chose the location where the transaction took place. It presents no question of the invasion of the privacy of a dwelling
In addition, the court finds that defendants, Edward Pace and Cecelia Pace, were at the time and for some time prior to April 5, 1966, the night of the raid, bona fide residential tenants of apartment 40 in 827 Union Avenue, Bronx, the premises in question. Accordingly, the court finds no similarity to the case cited and rejects this argument.
The People urge that a fire escape, like a hallway, stairway or lobby of a multiple dwelling, is a public place, and thus not within the ambit and protection of the Fourth Amendment and cite People v. Peters (44 Misc 2d 470, affd. 24 A D 2d 989, affd. 18 N Y 2d 238). In the Peters case, an off-duty policeman, while in his apartment located in a multiple dwelling, heard a loud noise outside of his door. On looking into the hall through the peephole of his door, he saw two men tiptoeing out of an alcove toward the stairway. Suspicious, he called the police and returned to his observations. Seeing them still tiptoeing up the stairs, he took his service revolver, slammed his door and ran into the hall. He chased the defendants and stopped them. On inquiry by the policeman resident as to what he was doing in the building, Peters replied — looking for a girl friend — whom he declined to name. The policeman then frisked Peters, looking for a weapon. Instead of a weapon he found burglar tools, which he turned over to the police on their arrival. The defendant was then taken into custody. The defendant thereafter moved to suppress the evidence. The motion was denied and affirmed by the appellate courts. In its affirmance the Court of Appeals upheld the constitutionality of the Stop and Frisk Law, section 180-a of the Code of Criminal Procedure, and held that hallways and stairways of multiple dwellings are public places within the intendment of that section and all that was necessary to bring the statute into effect was “ reasonable suspicion ” as distinguished from “ probable cause ”.
In the instant case there is nothing in the record to indicate that there was anything suspicious about the subject apartment or its occupants until the initial observation was made from the fire escape. No evidence of criminal activity is claimed to have been seen from the hallway. Moreover, examination of the Multiple Dwelling Law of this State reveals the following:
*38 Section 4 of the Multiple Dwelling Law defines a public hall as follows: “ 17, A c public hall ’ is a hall, corridor or passageway within a building but outside of all apartments and suites of private rooms. A ‘ public vestibule ’ is a corridor, not within an apartment or suite * * *. A1 public room ’ or ‘ public part ’ of a dwelling is a space used in common by the occupants of two or more apartments or rooms, or by persons who are not tenants ’ ’.
It is clear from the above that the underlying feature of a public hall is that its use is available to all who may be on the premises. It is an area used in common with others.
A fire escape, as defined in section 4 (subd. 42, par. c) of the Multiple Dwelling Law states: ‘ ‘ A ‘ fire-escape ’ is a combination of outside balconies and stairs providing an unobstructed means of egress from rooms or spaces in a building.” And in section 53 of the Multiple Dwelling Law it is stated: “ 1. Access to a fire-escape shall be from a living room or private hall in each apartment or suite of rooms * * *.
‘1 a. Such room or private hall shall be an integral part of such apartment or suite of rooms and accessible to every room thereof without passing through a public hall.
‘ ‘ b. When one or more living rooms of any apartment are rented to boarders or lodgers, every such room shall be directly accessible to a fire-escape without passing through a public hall, and for separately occupied living rooms access to fire-escapes shall be direct from such rooms without passing through a public hall or any other separately occupied room * # *.
“ d. Every such fire-escape shall be accessible to one or more exterior doors or windows opening from the room, apartment, suite of rooms or other space which it serves as means of egress * * *.
“9. * * * No fire-escape shall be removed from any apartment without due precaution against leaving occupants of such apartment without adequate means of egress in case of fire. ’ ’
It would appear that the Multiple Dwelling Law regards a fire escape as being an integral part of each apartment to be used by the occupant therein as a means of secondary egress in the event of fire.
Unlike public halls or stairs which are public areas used in common by tenants and their guests or others lawfully on the property, a fire escape in a nonfireproof building is required outside of each apartment as a secondary means of egress for the occupants of that apartment. While .it is true that in the event of fire others might have occasion to lawfully pass over the fire *39 escape of another, this would be the only time that one might be lawfully on the fire escape of another.
This court then does not agree that the rationale used to determine the validity of the “stop and frisk ” law, section 180-a of the Code of Criminal Procedure, is applicable to the case at bar. Nor does the court find any of the other cases cited by the People to be determinative of the outcome herein.
Similar to the instant case is the reported Appellate Term decision of People v. Kramer (38 Misc 2d 889). In that case a police officer climbed down the roof of an adjacent building onto the top of a ledge approximately 8 or 10 feet from the ground. The ledge was appurtenant to and part of premises housing a social club. The wall was about a foot away from a kitchen window, which, as in the instant case, had no shade but instead was covered by a rag which did not cover the entire window. Observations of book-making were made and related conversations were heard. The police then went in and made the arrest. The court in that case said (p. 892): “It is our conclusion the evidence concerning defendant’s activities observed by the arresting officer in the back yard while on the wall of premises, was the product of an unlawful trespass — an interference with defendant’s right of privacy and violative of the protection afforded him by the Fourth Amendment to the United States Constitution.” (Hobson v. United States, 226 F. 2d 890; Brock v. United States, 223 F. 2d 681; Polk v. United States, 291 F. 2d 230; McDonald v. United States, 335 U. S. 451.) And (p. 893): “ What he saw and heard constituted an illegal s.earch. ’ ’
A similar Appellate Term holding is found in the case of People v. Caraturos (N. Y. L. J., Jan. 24, 1963, p. 15, col. 6). In that case, evidence upon which a conviction was based was procured without the benefit of a search or arrest warrant. A police officer went through the rear of one building to the rear of the premises involved. He then climbed to the roof of a shed and stationed himself up against a partially opened window of a private social club on the second floor of the premises. From this vantage point, he saw and heard two persons phoning bets on horse races with the defendant. He climbed through the open window and arrested the defendant. In reversing the conviction the court said: “ In our opinion the observations of the police officer were made while he was committing a trespass and violating defendant’s right of privacy; the evidence thus and subsequently obtained was the product of an unreasonable search and hence inadmissible ” (citing People v. Kramer, *40 supra; Brock v. United States, supra, and McDonald v. United States, supra).
The People argue at page 12 of their brief: “It is clear that even if there was a trespass here, since that trespass did not embrace a search and seizure, there would have been no violation of the Fourth Amendment.” This court does not agree.
Webster’s New International Dictionary defines a “ search ” as follows: “ To seek; to look or make search for ”. “ Thus what one seeks with his eyes or seeks to hear may be a search ” (People v. Kramer, supra, p. 892).
An authorized search accomplished by a trespass constitutes a violation of the constitutional safeguard of a man’s right to privacy (Brock v. United States, supra). As is stated in Brock (supra, p. 685): “ To begin with, the agents, when they appeared outside Brock’s bedroom window, were in violation of his rights under the Fourth Amendment. Whatever quibbles there may be as to where the curtilage begins and ends, clear it is that standing on a man’s premises and looking in his bedroom window is a violation of his ‘ right to be let alone ’ as guaranteed by the Fourth Amendment.” (Italics added.)
In People v. Perlman (12 N Y 2d 89) a policeman telephoned bets to a suspected book-maker. He then went to the premises located in an office building. He stuck a pencil inside the mail slot, thus opening it sufficiently so that he could see and hear through it. He saw and heard the defendant accepting bets. The majority of the court held that this was a trespass and did not justify the entry or arrest.
The manner in which curtilage has been protected and held to be within the ambit of the Fourth Amendment can readily be seen from the following Federal decisions.
In Rosencranz v. United States (356 F. 2d 310, 313 [1966]) United States Court of Appeals, First Circuit, it is held: “ This Amendment speaks of ‘ houses ’ of persons, which word has been enlarged by the courts to include the ‘ curtilage ’ as ground and buildings immediately surrounding a dwelling, formally usually ©ncl o s g cl * *
In Walker v. United States (225 F. 2d 447 [C. A. 5th]) a barn surrounded by a fence was held within the curtilage although 70 or 80 yards from a house. In Whitley v. United States (237 F. 2d 787, 788 [C. A., D. C.]), it was said: “The arrest of Meredith, also, does not appear to have been legal and therefore does not justify the search and seizure. Since the porch from which the police saw Meredith was not open to public and the police reached it through a window, they had no right to be on the porch whatever may be thought of their previous presence *41 in the relatively public corridors of the rooming house. It follows what they saw from the porch, even if it gave them probable cause to believe that Meredith had committed a felony, did not justify them in arresting her.” (McDonald v. United States, 335 U. S. 451; see, also, Hobson v. United States, 226 F. 2d 890, supra.)
The police officer’s testimony was that on grasping the doorknob the apartment door opened. There is nothing in the record to indicate that evidence of a crime was seen on entering the apartment. Once in the apartment no evidence of a crime is discovered until reaching the rear bedroom.
In People v. Williams (24 A D 2d 274) decided by the Appellate Division, First Department, two detectives testified that they found the outer door of the apartment ajar “ maybe 8 inches to a foot” and entered without prior announcement of any kind. Narcotics and a gun were discovered. The court, in reversing the conviction, said (p. 276): “ Suppression of the narcotics and the gun as evidence seems to us to be required on these facts. Entry into the apartment was made without authority of any form of warrant or the sanction of exceptional exigiencies or circumstances, and at the time of entry probable cause for an arrest was undeniably nonexistent on the record as it now stands. The apartment was an area constitutionally protected against intrusion notwithstanding the defendant shared it with others (McDonald v. United States, 335 U. S. 451; Brown v. United States, 83 F. 2d 383, 385; Work v. United States, 243 F. 2d 660; cf. United States v. Jeffers, 342 U. S. 48; Jones v. United States, 362 U. S. 257, 265-267); and the intrusion by persons who were not guests of any of the tenants was not less improper because the door was partly open (Nueslein v. District of Columbia, 115 F. 2d 690, 691; United States v. Price, 345 F. 2d 256, 259, note 6; People v. Haven, 59 Cal. 2d 713; see Hair v. United States, 289 F. 2d 894, 897; Silverman v. United States, 365 U. S. 505, 512; cf. People v. Viola, 264 App. Div. 38, 40). The connection between the unlawful entry and the discovery of the challenged evidence is too direct to be disregarded (People v. Loria, 10 N Y 2d 368; Badillo v. Superior Court, 46 Cal. 2d 269; State v. De Grazio, 39 N. J. 268; McDonald v. United States, supra).”
In People v. Loria (supra) the Court of Appeals (p. 373) stated: “ The validity of an arrest or an entry to effect an arrest without a warrant depends on there being probable cause to make the arrest. That probable cause, however, cannot be based upon evidence obtained as a result of the search, when the validity of the search itself depends upon the legality of the *42 arrest. If there is no probable cause to arrest initially, the entry and subsequent search are illegal, for ‘ A search prosecuted in violation of the Constitution is not made lawful by what it brings to light ’ (Byars v. United States, 273 U. S. 28, 29; Henry v. United States, 361 U. S. 98, 104). ‘ In law [a search] is good or bad when it starts and does not change character from its success ’ (United States v. Di Re, 332 U. S. 581, 595). ‘ Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant ’ (Agnello v. United States, 269 U. S. 20, 33; Jones v. United States, 357 U. S. 493, 497; Taylor v. United States [286 U. S. 1]).”
It is apparent then, that if the probable cause was obtained as a result of a trespass, the motion to suppress must be granted.
Shortly after the decision of Mapp v. Ohio (367 U. S. 643) our Court of Appeals was called upon to determine the case of People v. Friola (11 N Y 2d 157). In affirming the lower court, the majority wrote (p. 159): “ We do not reach the question of the alleged illegality of the search and seizure, for in our opinion no question of law has been preserved for our review.” The lower court was thus affirmed. In a dissenting opinion, however, Chief Judge Desmond, with Judge Fuld joining him, stated: “ Since the majority decline to examine into the real question presented by the appeal, we dissenters will not give it extended treatment. The officer who presented the offending evidence obtained, it by a trespass. He had stationed himself on an upper landing of a fire escape outside defendant’s apartment and heard conversations interpreted as connected with gambling activities. His presence was a violation of defendant’s rights to privacy in his home and ‘ curtilage ’ (Kroska v. United States, 51 F. 2d 330; Wakkuri v. United States, 67 F. 2d 844; United States v. Blok, 188 F. 2d 1019; see Watchtower Bible & Tract Soc. v. Metropolitan Life Ins. Co., 297 N. Y. 339, 348). Evidence seized by means of a trespass is inadmissible under the Fourth Amendment (Silverthorne Lbr. Co. v. United States, 251 U. S. 385; Johnson v. United States, 333 U. S. 10).” (Italics added.)
In another ease reported in the New York Law Journal (April 15, 1963, p. 13, col. 4) People v. Thigpen, Judge Conway wrote as follows: 1 ‘ The question presented is whether a police officer possessed of such information may climb a fire escape upon an apartment house building to the sixth floor and there stand upon the platform of such fire escape * * * look into the room through the window opening on such platform and hear through the window a telephone conversation from which the policeman *43 deduced that the defendant had just taken three bets * * * and then act upon his deduction by entering the apartment so as to arrest the defendant and admit other police officers from the hallway of the apartment house at its sixth floor * * * I have concluded that a police officer under the circumstances as stated may not do so without a warrant authorizing search and seizure. This was a multiple dwelling. A fire escape was required by statute thereon. In my judgment the platform of the fire escape outside the window of the apartment, through which the police officer looked and entered, was a necessary part of the defendant’s home. When the policeman climbed up to that platform and then stood thereon he was a trespasser upon the property which the defendant had rented from the landlord. The platform was a necessary part of that apartment by statute in that multiple dwelling.”
A fair determination and analysis of the decisions leads this court to the unalterable conclusion that a fire escape outside of a man’s residence is in law part of the curtilage of his apartment and as such is entitled to the protection of the Fourth Amendment.
Accordingly, the observations surreptitiously made by the police from the fire escape, which created the probable cause, were made in the course of a trespass and were consequently illgal, probable cause having been illegally acquired. The entrance into the residential apartment without a warrant was illegal and violative of the Fourth Amendment and all evidence and admissions obtained as a result thereof must be suppressed.
As was stated by the Supreme Court of the United States: “ This guarantee of protection against unreasonable searches and seizures extends to the innocent and guilty alike. It marks the right of privacy as one of the unique values of our civilization and, with few exceptions, stays the hand of the police unless they have a search warrant issued by a magistrate on probable cause supported by oath or affirmation.” (McDonald v. United States, 335 U. S. 451, 453.)
It is the further finding of this court from the credible evidence adduced that from the time the police entered the apartment until the time they left with the defendants under arrest that the defendants were ‘ ‘ on target ’ ’ and ‘ ‘ not free to go ’ ’, and hence were in custody. Questioned while in custody, they were entitled to the fourfold warning as mandated by the United States Supreme Court in Miranda v. Arizona (supra, p. 479): “He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in *44 a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.”
As is stated by Mr. Justice Sobel in the case of People v. Allen (50 Misc 2d 897, 900) in his analysis of the Miranda case (supra):
1 ‘ I rule that under the precise holding of Miranda an incriminating answer to a single routine question may be the product of custodial interrogation requiring as an absolute condition of admissibility, the giving of the fourfold warning. I read Miranda as holding that such warning is required at the point where ‘ a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.’ (384 U. S. 436, 444.)
“ I necessarily hold under such a construction of Miranda that: It does not matter that the question was asked in the defendant’s home upon ‘ first ’ custody rather than in the police station. Nor that the question was asked prior to ‘ arrest ’ so long as the defendant was not at such time free to go.”
The arrests here were made prior to the Miranda decision.
It is conceded by the police that with respect to defendants Edward Pace, Cecelia Pace, Willie Crews, Mary Berry, Barbara Polite, Ollie Stephens, no effort was made to advise them of their constitutional rights, as required by the fourfold warning of Miranda {supra). Accordingly, the admissions allegedly made by them are suppressed.
With respect to defendant Terrell the court finds from the credible evidence adduced that Terrell, on entering the apartment, was “ on target ” and in “ custody” within the intendment of Miranda and that prior to his oral admissions he had not been properly apprised of his rights as mandated by Miranda {supra). Hence the oral admissions made by bim are suppressed.
The court further finds from the credible evidence that the “ warnings ” made by the police to apprise Terrell of his rights prior to the taking of the written statement in question did not satisfy the constitutional requirement of Miranda and hence this, too, must be suppressed. That portion of the motion which seeks an inspection of the Grand Jury minutes is denied with leave to the defendants to renew at the trial of the action herein.