Jack Rosenberg, J.
This is a motion to suppress certain evidence on the ground that it was the result of an unreasonable search and seizure by the arresting police officers.
The evidence is undisputed that the arrests and search which resulted in the prosecution of the defendants herein were made without a warrant. It appears that the landlord of the build *953 ing, in an apartment in which the search and seizure and arrests here in question, were made, notified the police that he had reason to believe that the tenants of the subject apartment were engaged in the illicit traffic of narcotic instruments. This court finds that such communication is an inferential permission and consent to use whatever facilities were under the landlord’s control.
Thereupon, acting on the landlord’s consent as indicated, one of the arresting officers went on the fire escape to a place outside defendants ’ apartment window. From there he observed the defendants engaged in activities clearly demonstrating engagement in the illicit possession of hypodermic instruments for narcotic purposes, and with his companions entered the apartment, arrested the occupants he had seen engaged in those activities and seized the evidence involved in those activities.
Now the defendants move to suppress the said evidence on the ground that it was the result of an illegal search and seizure and, therefore, a violation of their Fourth Amendment rights.
At first view, the facts in this case would seem to be indistinguishable from those in the case of People v. Terrell (53 Misc 2d 32) decided by Mr. Justice Francis T. Murphy on February 15, 1967.
There, too, the arresting policemen included one who went on the fire escape and peeking through the window, saw the defendants engaged in activities clearly showing involvement in the illicit sale of narcotic drugs and notified his fellow police officers who entered the apartment and made the arrests and seized the evidence. But there the motion was granted on the ground that the officer who viewed the incrimination scene was engaged in an illegal trespass within the curtilage of the defendant’s apartment, which the court interpreted as including the fire escape platform outside the window of the defendant’s apartment. Nor is this finding without precedent. Thus in People v. Terrell (53 Misc 2d 32, 43), crediting the conclusion of Judge Conway in People v. Thigpen (N. Y. L. J., April 15, 1963, p. 13, col. 4). Judge Francis T. Murphy stated as follows: “ a fire escape outside a man’s residence is in law part of the curtilage of his apartment and as such is entitled to the protection of the Fourth Amendment.” On the basis of this finding the court granted a motion to suppress evidence as illegally seized where a police officer possessed of information which led him to believe that defendant was engaging in a crime climbed a fire escape on an apartment house building to the sixth floor and stood upon the platform of the fire escape and looked into the window and overheard a telephone *954 conversation from, which he deduced that the defendant had just taken bets and thereupon entered the apartment and arrested defendant. The court noted that this was a multiple dwelling for which a fire escape was required by statute and therefore the fire escape platform outside the window of the apartment was a necessary part of the defendant’s home. The court found that when the policeman climbed up to the platform and stood there he was a trespasser on property which defendant had rented from the landlord and, therefore, what he there observed was an unlawful search and seizure. (See, also, People v. Kramer, 38 Misc 2d 889; People v. Garaturos, N. Y. L. J., Jan. 24,1963, p. 15, col. 6.)
But in none of these cases was the landlord in any way involved. In the instant case the police officer who witnessed the illicit behavior went there on the basis of information supplied by the landlord having inferential permission of the landlord to go upon the fire escape and proceed to the landing outside of defendant’s window. The question is whether, in such case, the police officer was nevertheless engaging in a trespass. It is clear that if there was no trespass by the police, the resultant arrest, made on the basis of police observation of acts clearly constituting a crime, and the accompanying search and seizure, are valid. See People v. Sperber (40 Misc 2d 13, affd. 15 N Y 2d 566) where a search and seizure was upheld where a policeman had placed a ladder on the roof of an adjoining building about two feet from the candy store building of defendant and, overhearing evidence of gambling, entered the store and arrested and searched defendants finding further incriminating evidence.
It is true that as against nonresidents of an apartment house, a dweller in an apartment can claim a superior right against unnecessary intrusions on the fire escape platform outside his apartment windows. But the fire escape is there, not for his exclusive use, as is the rest of his apartment. 'Clearly it can be used by other tenants and persons in their apartments in case of fire. In fact fire escapes are listed as a 1 ‘ means of egress ” in the Administrative Code of the City of New York (eh. 26, tit. C, art. 7, sub-art. 8). And the fact that it is not part of the tenant’s apartment with which he may do as he pleases is made manifest by section C26-301.0 which makes it unlawful for any person to place any obstruction in front of, in or on any required means of egress. Section C26-301.1 provides that “fire escapes, exterior stairways, their drop ladders and counterbalanced stairs shall be kept entirely clear of flower boxes, flower pots, chairs, pails and other obstruc *955 tions.” This is hardly consistent with the claim made in the Terrell and Thigpen decisions that the fire escape platform outside a tenant’s window is part of his apartment.
The fact is that fire escapes, like the halls and lobbies of an apartment house, are means of egress in case of emergency for all tenants and, for that matter, of all persons within the building in case of emergency. And fire escapes, like halls and lobbies and the outside of apartment buildings generally, are, if not primarily in the control of the landlord, at least co-extensively in his control with the tenant. Thus in Alcoa Residences v. Association of Tenants of Lincoln Towers (28 A D 2d 831 [1967]) the Appellate Division upheld an injunction prohibiting tenants from displaying aluminum foil or other material from windows on the ground that ‘ 1 the outside of the building was not rented to the tenants, and their action in displaying material from the windows was in effect a trespass upon a portion of the building reserved to the plaintiff. ’ ’
Since the fire escape is an alternative means of egress to the halls and lobby which must be provided by the landlord to all tenants and must be maintained by him for the use of all tenants and tenants may not use the fire escapes in a manner which obstructs them (Multiple Dwelling Law, §§ 4, 53), it follows that they are under the joint control of the landlord and all of his tenants.
And in this connection the concept of curtilage gives us no help. Curtilage is defined as the inclosed space of ground and building immediately surrounding a dwelling house. A more detailed definition is as follows: “In its most comprehensive and proper significance, it includes that space of ground and buildings thereon which is usually enclosed within the general fence immediately surrounding a principal messuage and outbuildings and yard closely adjoining to a dwelling-house, but it may be large enough for cattle to be levant and couchant therein. 1. Chit. Gen. Pr. 175.” Black’s Law Dictionary (3d ed., p. 492) also contains the following definition : £ £ The curtilage of a dwelling-house is a space, necessary and convenient and habitually used for the family purposes, and the carrying on of domestic employments. It includes the garden, if there be one, and it need not be separated from other lands by a fence.” To speak of curtilage as including the fire escape platform in an apartment, is to ignore the facts of life of apartment living and the limitation of common-law concepts applying to single-house and yard concept of 18th century life. Fire escapes are an apartment house facility which, under the law, the landlord must provide and main *956 tain, and the fire escape system must he open and available to all tenants and their guests in case of emergency. It is not part of each tenant’s apartment and, as against the landlord, the tenants’ rights of exclusivity and privacy are clearly subject to the co-extensive jurisdiction of the landlord.
What, therefore, is the effect of the grant by the landlord here to the police of permission to go on the fire escape to observe the conduct of defendants through the fire escape window? In the opinion of this court it makes the entry on the fire escape by the police officer completely legal and proper. There was, therefore, no trespass and the arrest and search and seizure were, as a consequence, legal. Where premises are under the joint control of two or more persons, consent to entry for purposes of observation or search and seizure by one makes the entry legal and no claim of illegal entry or trespass may validly be made by other persons having joint control of the premises with the persons giving consent.
See United States v. Sferas (210 F. 2d 69 [C. A. 7th, Ill, 1954]). There one of two brothers who were partners in a printing business consented to a search for counterfeit plates by Federal agents. Plates found in the search were used in the trial of the other brother. In rejecting the motion to suppress the Court of Appeals said (p. 74): “ We hold that record clearly discloses that such consent was given, thus obviating the necessity for a search warrant. Further, we think the consent given by James Sferas was binding upon his brother Sam. We have been unable to find any authority on this point involving a partnership, but the rule seems to be well established that where two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either.”
The motion to suppress must therefore be denied.