136 N.J. Super. 61 (1975)
344 A.2d 332
STATE OF NEW JERSEY, PLAINTIFF,
v.
MARIO FERRARI, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 7, 1975.
*62 Mr. Archibald Kreiger, Assistant Prosecutor, for plaintiff (Mr. Thomas Shusted, Camden County Prosecutor, attorney).
*63 Mr. Saverio R. Principato, attorney for defendant.
BIGLEY, J.C.C., Temporarily Assigned.
Defendant, a deputy police chief in the Camden Police Department, has been indicted for conspiracy, obstruction of justice and misconduct in office. The charges arise from an alleged attempt to "fix" traffic tickets. Ferrari now brings this motion to suppress the incriminating evidence seized from his office desk at the police department's Patrol Division headquarters. The evidence was discovered during a search conducted by the Chief of Police of Camden and several others between one and two o'clock on the morning of August 6, 1974. Testimony revealed that after an attempted forcible entry the office was entered by using a key obtained from defendant's secretary. It appears that the only other key to the office was in defendant's possession. The desk was forcibly opened with some sort of instrument because the secretary had no key to it. Found within the desk were the two traffic tickets presently the subject of this motion.
The question presented by this motion to suppress is whether the Fourth Amendment to the U.S. Constitution precludes the use of evidence seized by an employer without a warrant when the employer is the government. It appears that the courts of New Jersey have not previously considered this issue. Proper resolution of the question requires, initially, a review of the basic goals of the Fourth Amendment.
Since Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), it has been recognized that the Fourth Amendment
* * * protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. * * * But what he seeks to preserve as private, even in an area accessible to the public may be constitutionally protected. *64 Justice Powell has observed that the Fourth Amendment protects the "areas of an individual's life about which he entertains legitimate expectations of privacy". United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (Powell, J. concurring). This protection guarantees freedom from unreasonable governmental intrusions into a person's privacy, but it does extend to acts of private individuals. As the Supreme Court stated in Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921):
The Fourth Amendment gives protection against unlawful searches and seizures ... its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies... (at 475, 41 S.Ct. at 576).
This means that an employer may search those areas of the place of employment that are dedicated to the private personal use of his employees, and if the employer finds evidence of illegal activity, that evidence may be turned over to the police for use in a criminal prosecution. This may be done without the Fourth Amendment requiring suppression of the material. State v. Robinson, 86 N.J. Super. 308 (Law Div. 1965). But where there is collusive activity by the officers of the government and private citizens, the Fourth Amendment precludes the use of evidence which is the product of such activity. Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); State v. Scrotsky, 39 N.J. 410 (1963); State v. Roccasecca, 130 N.J. Super. 585 (Law Div. 1974).
What must be clearly understood is that this case does not involve the inadvertent discovery of incriminating evidence in the desk of a government employee by either a coworker or supervisor who is looking for something necessary to conduct the day-to-day business of the office. Evidence *65 discovered under these circumstances would not be barred by the Fourth Amendment. That Amendment was never intended to totally insulate individuals from governmental intrusions into their lives.
Virtually every governmental action interferes with personal privacy to some degree. The question in each case is whether that interference violates a command of the United States Constitution. (389 U.S. at 350, 88 S.Ct. at 511 n. 5)
Searches conducted by the government are always measured against a standard of reasonableness. Only those searches deemed unreasonable under the facts of a particular case are to be condemned. Thus, in the case of inadvertent discovery, to read the Fourth Amendment as precluding the use of evidence so obtained would be an unreasonable hindrance in the operation of government offices.
The State's argument against suppression is that an employer has the right to investigate criminal activity engaged in by its employees and to conduct searches of the employees' work and personal areas incidental to such investigations, regardless of whether the employer is private or governmental. In support of this position the State relies on United States v. Robinson, supra, and Shaffer v. Field, 339 F. Supp. 997 (D.C. Cal. 1972), aff'd 484 F.2d 1196 (9 Cir.1973).
Robinson involved the search by an employer of his employee's locker. In the course of upholding the search the court states, "An employer has a right which it can lawfully exercise * * * to obtain the return of its own materials * * * [n]ot to permit an employer to do so places him at the mercy of his employees." However, there the employer was a private citizen and the police were not involved in the search. Thus, the Fourth Amendment does not apply under the rule of Burdeau. This major factual distinction renders Robinson inapposite to the instant situation.
In Shaffer a deputy sheriff was charged with murder in connection with the shooting of a burglary suspect. A pistol *66 was found near the victim and there was reason to believe that the gun was planted by the deputy. The deputy had a locker at the sheriff's station which was searched. This search produced incriminating evidence. Lockers assigned to deputy sheriffs were owned by the sheriff's department and the commanding officer had a master key to all of them. Also, the locks on the lockers could be changed at will, and on at least three previous occasions deputies' lockers had been searched without their permission. Under these circumstances the Ninth Circuit Court of Appeals ruled that the search did not violate the Fourth Amendment because there was no reasonable expectation of privacy in the use of lockers.
A clear distinction exists between the situation in Shaffer and that of the instant case. Here, it appears that despite the fact that the office and desk were owned by the police department, only defendant Ferrari and his secretary had keys to the office itself and only defendant had keys to the desk. From these facts it would appear that defendant enjoyed exclusive use of the office and desk. Furthermore, there is no indication in the record of any previous searches or inspections being made of defendant's office area or even that searches of any part of the building were commonplace. It is this limited exposure of defendant's desk and office area to other members of the police department which leads to the conclusion that Ferrari was justified in believing that the contents of his desk would be free from intrusion by the government acting in an investigatory capacity.
Support for this conclusion is drawn from several sources. In Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), it was held that government employees are not subject to "watered down" versions of constitutional rights by reason of their public employment. Also, implicit in the Shaffer court's finding that the locker was not an area where a reasonable expectation of privacy existed is the recognition *67 that there are some areas where a public employee might enjoy such an expectation, or it would have declared that public employees do not have any privacy rights at work.
The pre-Katz decision of United States v. Blok, 88 U.S. App. D.C. 326, 188 F.2d 1019 (D.C. Cir.1951), while not speaking in terms of a reasonable expectation of privacy, nevertheless appreciated its existence when it held that a government employee, who had an exclusive right to use the desk assigned to her, was protected by the Fourth Amendment from her supervisor consenting to a search of it by police. What else could the "exclusive use" doctrine mean but that one who enjoys the exclusive use of an area may expect no one else will have access to it without the user willingly permitting access, even though the area is owned by the government?
United States v. Kahan, 350 F. Supp. 784 (S.D.N.Y. 1972), aff'd on other grounds 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974), is the most recent case dealing with searches of government employees at their places of employment. There, the seizure of papers from the wastebasket of an Immigration and Naturalization Service employee was declared to be a violation of the Fourth Amendment. The court concluded that the government employee had a reasonable expectation of privacy in the "limited area of the office which is devoted to his exclusive use" and that right of privacy "must be protected from intrusions by the investigative and prosecutory arms of government." In the course of her opinion Judge Motley acknowledged certain parallels between the management of private offices and government offices and the need in both situations for supervisors to oversee the work of employees to assure honesty and efficiency. But, as she aptly observed,
* * * when a government supervisor begins an investigation of suspected criminal activities of an employee in the course of his work, the supervisor's role is no longer that of a manager of an office but that of a criminal investigator for the government. The purpose of *68 the supervisor's surveillance is no longer simply to preserve efficiency in the office. It is specifically designed to prepare a criminal prosecution against the employee. [350 F. Supp. at 791]
Therefore, the Fourth Amendment applies to evidence seized as the result of a surveillance or search so conducted, whereas it would not apply to a private employer. In the context of an investigation by the government supervisor the court could
* * * see no distinction between a search of a government office specifically for the purpose of uncovering incriminating evidence and a similar search of a private office. Certainly, government employees have as much reason as private employees to expect that their desks and their wastebaskets will be free from the invasion of criminal investigators of the government. [Id. at 792]
In the case at bar testimony revealed that Ferrari was suspected of having dossiers in his office which allegedly posed a threat to the welfare of the people of the City and County of Camden. Presumably, such material was considered by those who searched his office and desk to be illegal; therefore, it is appropriate to conclude that the search was part of a criminal investigation and was not mere supervision of defendant's work. This conclusion is bolstered by the fact that the search was conducted between one and two in the morning when defendant was not in his office. Additionally, the suspicion of criminal activity, the forcible entry, and the late hour completely remove from consideration the possibility that those who conducted the search were looking for items necessary to conduct the day-to-day business of the police department.
From the previously cited cases it appears that government employees do not sacrifice their Fourth Amendment rights as a condition of their employment. Indeed, in certain situations they may have greater protection than a private employee whose employer's seizure of evidence might not be barred by the Fourth Amendment. Therefore, since *69 this court has found the defendant was entitled to a reasonable expectation of privacy in his desk and that a criminal investigation was being conducted, the Fourth Amendment bars the use of the seized evidence.
Accordingly, defendant's motion to suppress is granted.