Hopkins, Acting P. J. (dissenting).
I dissent and vote to affirm. Even though the acts of the defendant were observed by the police investigator in the course of an illegal search, the acts constituted, in themselves, an independent crime concerning which the observations of the officer were legal evidence. The doctrine of the taint of the poisonous tree should not be extended to infect evidence of the personal observation by a police officer of a crime committed in his presence.
The analysis upon which I base this conclusion takes into account the following:
1. There was sufficient time for a search warrant to be obtained prior to the appointment of the policewoman with the defendant. I shall assume, also, that the evidence supporting the complaints of the two female patients was so tenuous that a search warrant could not have been legally issued.
2. The doctrine of the poisonous tree strikes down the evidence of observations made as the result of an illegal search, as well as tangible evidence seized as the result of an illegal search (cf. State of Texas v Gonzales, 388 F2d 145; Whitley v United States, 237 F2d 787; Brock v United States, 223 F2d 681; People v Terrell, 53 Misc 2d 32, affd 30 AD2d 644).
3. The record is insufficient to support a factual finding that *505 the police investigator was engaged in the observation of the defendant’s medical office in order to protect the policewoman from any attack which the defendant might make upon her. Nor is the decisional law clear that an intrusion, otherwise unlawful, becomes insulated from invalidity when it occurs for the protection of another police officer, as argued by the prosecution (cf. Rodriquez v State, 189 So 2d 656 [Fla], cert den sub nom Suarez v Florida 389 US 848; State v Keefe, 13 Wash App 829).
4. The concept of privacy is linked with the Fourth Amendment, though the latter affords broader safeguards in certain instances (Katz v United States, 389 US 347, 350; cf. Amsterdam, Perspectives on the Fourth Amendment, 58 Minn L Rev 349). The ancient definition of "curtilage” should not be decisive in determining whether the Fourth Amendment has been violated.[1] Similarly, whether the invasion took place within a commercial building or a home should not be the test. The teaching of Katz is that what is sought to be preserved "as private, even in an area accessible to the public, may be constitutionally protected” (Katz v United States, supra, pp 351-352).[2]
5. Privacy undoubtedly attaches to a doctor’s office. Both doctor and patient expect their transactions to be private (see, e.g., CPLR 4504; but, see 8 Wigmore, Evidence [McNaughton rev], § 2380a, pp 829-832). Nevertheless, when the patient is the victim of a crime perpetrated by the doctor, the reason for the privacy is punctured and the shield of the privilege falls (8 Wigmore, Evidence [McNaughton rev], § 2385).
6. It must constantly be borne in mind that the Fourth Amendment speaks in terms of "unreasonable searches and seizures” (US Const, 4th Arndt; see United States v Minton, 488 F2d 37, cert den 416 US 936; Commonwealth v Hernley, 216 Pa Super Ct 177; Ann 48 ALR 3d 1178).
These considerations lead me to the conclusion that the police investigator unlawfully trespassed when he placed the *506 ladder against the building and observed the defendant’s assaults on his patient. The illegal invasion thus formed an unreasonable search, barred by the Fourth Amendment. I find no escape from this conclusion through the exception of exigency, because no one could foretell that a crime was to be committed. It was, indeed, fortuitous that the investigator saw the incident which became the subject of the indictment. Nor am I able to excuse the illegality by the need to protect the policewoman. If this exception were uniformly adopted, the exception would engulf the Amendment.
Nonetheless, I would not hold that the exclusionary rule under the poisonous tree doctrine precludes the evidence of the investigator’s observations. Here, the search disclosed an independent crime—a crime committed in front of the investigator and having nothing at all to do with the circumstances which brought the investigator initially to the scene. The evidence, through the observation of an independent crime, has been determined not to be tainted by a prior illegal search (see People v Munger, 37 AD2d 950; Vinyard v United States, 335 F2d 176, cert den 379 US 930; United States v Troop, 235 F2d 123; State v Miller, 282 NC 633).
In Munger a concededly illegal entry by police officers preceded a bribery offer and it was said that the police action did not ban the prosecution for the later crime. In Miller the defendant shot and killed an officer in a police party making a raid into a home in which gamblers were suspected to be operating. The raiding party was armed with an invalid search warrant and the Supreme Court of North Carolina held the entry to be illegal, but that, nevertheless, the application of the exclusionary rule in such a case would, in effect, give victims of illegal searches a license to assault and kill police officers so engaged.
The rule of Munger and Miller has even greater efficacy in defendant’s case. In each of those cases, the illegal search was the incident out of which the subsequent crime (bribery, murder) was derived; not so here, because the crime observed was unconnected with the illegal search. The defendant, it is clear, was not aware that he was being observed, and the timing of his sexual assault happened merely to coincide with the duration of the investigator’s presence outside the window. *507 Thus, both Munger and Miller present harder factual grounds for the application of the rule.[3]
One more point I must discuss. It is surely anomalous that at the same time that the defendant raises the question of the suppression of evidence, the record also contains a full statement in specific detail by the defendant of his sexual conduct toward his patient taken as the necessary foundation for his plea of guilty to the crime of sexual abuse in the first degree. Thus, the claim takes on an unearthly aspect somewhat like the episode in the case referred to by Judge Frankel in his recent article (Frankel, The Adversary Judge, 54 Texas L Rev 465). In that case (United States v Capra, 372 F Supp 603, affd in part, revd in part 501 F2d 267, cert den 420 US 990), at the suppression hearing, three defendants charged with narcotics violations sought to bolster their standing to make the motion by testifying that they had packaged heroin and transported it into New York. After their motion had been denied, the defendants did not take the stand at the trial and their counsel defended them by attempting to show, through cross-examination of the prosecution’s witnesses, that the defendants had nothing to do with the heroin. Perhaps these contradictions are desirable in a society in which we rightly lay stress on the values shielded by the Fourth Amendment, but they present dilemmas not easily explicable to the public.
The exclusionary rule plainly serves the purpose of deterring illegal police activity (Mapp v Ohio, 367 US 643, 646-650); that purpose is furthered by preventing the admission of evidence of past crimes. However, the objective of deterrence is not accomplished by closing the eyes and mouth of a police officer who sees a crime committed in his presence, even though he is there illegally. The Fourth Amendment is to be construed in tune with its announced commandment of reasonableness, and so it should be in this case (cf People v Mitchell, 39 NY2d 173).
Martuscello and Hargett, JJ., concur with Rabin, J.; Hopkins, Acting P. J., dissents and votes to affirm the orders insofar as reviewed and to affirm the judgment, in an opinion, in which Cohalan, J., concurs.
*508 Order dated November 29, 1974 reversed insofar as reviewed, on the law, and the branch of defendant’s motion which sought to suppress the testimony of the police investigator as to his observations is granted.
Order dated February 28, 1975 affirmed.
Judgment reversed, on the law, the plea is vacated and the case is remanded to the County Court for further proceedings in accordance with the opinion of Rabin, J.
As to the facts, this court has assumed, for the purpose of this appeal, that Investigator Apolinario trespassed upon the defendant’s property for the purpose of protecting Officer Hopkins, but has not passed upon that fact. The findings of fact are otherwise affirmed.

. The "open fields” principle was first enunciated in Hester v United States (265 US 57), and illustrated in later cases (Giacona v United States, 257 F2d 450; United States v Sterling, 369 F2d 799; Foster v United States, 296 F2d 65). That principle does not appear viable after Katz v United States (supra).

. Katz, decided in 1967, was subsequent to People v Sperber (40 Misc 2d 13, affd 15 NY2d 566) and People v Terrell (supra), involving factual patterns somewhat like the instant case, but coming to varying conclusions, based apparently upon whether a dwelling or a store was the place invaded. However, the affirmance of Terrell (without opinion) followed Katz.

. Moreover, the illegal searches in both Munger and Miller were "but for” causes for the crimes committed in the context of proximate cause as a test for tortious conduct, so that those crimes could have been said to be inextricably tied to the invalid search.