170 N.J. Super. 298 (1979)
406 A.2d 313
STATE OF NEW JERSEY, PLAINTIFF,
v.
RUFUS ALEXANDER, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided July 18, 1979.
*300 Mr. Peter R. Willis for defendant (Messrs. Willis & Maslo, attorneys).
Mr. Anthony Catalano, Assistant Prosecutor for the State (Mr. James T. O'Halloran, Prosecutor of Hudson County, attorney).
THURING, J.S.C.
Defendant moves to suppress evidence seized in his apartment without a search warrant after a police surveillance from his fire escape. The burden rests on the State to prove the legality of a warrantless search by a preponderance of the evidence. State v. Whittington, 142 N.J. Super. 45, 51-52 (App. Div. 1976).
Detective Kenneth Campion and Sergeant William Forrester of the Jersey City Narcotics Squad testified that on September 11, 1978 at 11:00 a.m. they were on patrol with Detective *301 Michael Kelly. A radio call from police headquarters advised them that defendant was believed to be in the process of bagging narcotics in his apartment at 277 Harrison Avenue. The original source of the information was not identified. Upon proceeding to the apartment house they learned from a tenant that defendant occupied Apt. B-4 on the second floor.
The officers heard nothing at defendant's door, so Forrester and Campion went up to the roof. They then climbed down the fire escape stairs to see if they could peer into defendant's apartment. Nothing incriminating was visible through a window directly facing defendant's fire escape landing. With Forrester holding him for safety reasons, Campion leaned over the fire escape railing in order to look into a second window eight feet from the fire escape. Defendant was observed sitting on a couch in his apartment with narcotics paraphernalia in front of him. Testimony of the officers conflicted as to whether the window was partially covered with a shade.
The officers returned to defendant's apartment door with Detective Kelly, who had been stationed on the roof. As they did so, defendant came out of his apartment. Campion "grabbed" defendant, pushing him against a wall, because he feared defendant was armed. The officers told defendant that they could obtain a search warrant because of what Campion had observed from the fire escape. Defendant, according to the officers, then gave them permission to enter the premises. Campion testified that defendant signed a form consenting to the search during the actual search, while Forrester stated that it was signed later at police headquarters. A .32 caliber revolver, three manila envelopes of marijuana, a silver packet of cocaine, 39 glassine bags of heroin, two boxes containing glassine bags and $4,200 in cash were seized.
Defendant testified to a different version of the facts. He stated that the shades and draperies on all of his windows were closed. Defendant denied that he ever consented to the search *302 and asserted that he later signed the consent form at the station house without knowing what it was. He had come out of his apartment to check the fuse box because his lights had gone out. It was then that the officers accosted him in the hallway and forced him back inside at gun point.
The State's position is that the police action was proper under the "plain view" doctrine or lawful consent to search. Defendant challenges the applicability of either theory.
The court first turns to the issue of plain view. Objects falling within the plain view of an officer who is rightfully in a position to have that view are subject to seizure. Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); State v. DiRienzo, 53 N.J. 360, 385 (1969). Additionally, only "exigent circumstances" endow legality to a warrantless intrusion into a constitutionally protected area after a plain view observation. State v. O'Herron, 153 N.J. Super. 570, 576 (App.Div. 1977), cert. den. 439 U.S. 1032, 99 S.Ct. 637, 58 L.Ed.2d 695 (1978). The initial question to be resolved is whether the detective had a right to be where he was on defendant's fire escape. If a plain view results from an unlawful intrusion into a constitutionally protected zone, evidence subsequently seized must be suppressed. Id. at 574.
One measure of the scope of constitutionally protected areas outside a person's home is the so-called "curtilage" doctrine. Those areas immediately adjacent to a dwelling are generally protected from warrantless searches. See State v. Vargas, 160 N.J. Super. 235 (Law Div. 1978). No reported New Jersey cases have considered whether a fire escape constitutes curtilage of an apartment adjacent to it. New York cases that have considered the question are split. Compare People v. Terrell, 53 Misc.2d 32, 277 N.Y.S.2d 926 (Sup.Ct. 1967), aff'd 30 App.Div.2d 644, 291 N.Y.S.2d 1002 (App.Div. 1968) and People v. Friola, 11 N.Y.2d 157, 227 N.Y.S.2d 423, 182 N.E.2d 100 (App. Div. 1962) (Desmond, J., dissenting), with People v. Hailstock, 54 Misc.2d 952, 283 N.Y.S.2d 492 (Crim.Ct. 1967).
*303 The continuing validity of the curtilage doctrine was called into question after Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967), which held that "the Fourth Amendment protects people, not places." Post-Katz cases involving fire escape surveillances in other jurisdictions have used a standard of expectation of privacy rather than the curtilage doctrine. State v. Clarke, 242 So.2d 791 (Fla.D.Ct.App. 1970), cert. den. 246 So.2d 112 (Sup.Ct. 1971); Cohen v. Superior Court, 5 Cal. App.3d 429, 85 Cal. Rptr. 354 (D.Ct.App. 1970). Accordingly, the scope of the Fourth Amendment should, in this case, be determined by the test of whether the police intruded upon an area where defendant had a reasonable expectation of privacy. See State v. Ferrari, 136 N.J. Super. 61, 64 (Law Div. 1975), aff'd 141 N.J. Super. 67 (App.Div. 1976); Wattenburg v. United States, 388 F.2d 853, 857 (9 Cir.1968).
The court is cognizant of the language in State v. O'Herron, supra 153 N.J. Super. at 581, noting the "clash between the concepts of `plain view' and `reasonable expectation of privacy.'" However, O'Herron dealt with the requirement of a search warrant after a plain view which was admittedly accomplished without intrusion into any constitutionally protected location. The present case considers whether the initial plain view was unconstitutionally intrusive; therefore, the expectation of privacy standard is applied in that context. See, e.g., People v. Sneed, 32 Cal. App.3d 535, 540, 108 Cal. Rptr. 146, 149 (D.Ct.App. 1973).
One's expectation of privacy varies under different circumstances. The Fourth Amendment does not protect what a person knowingly exposes to the public, even in his own home. Katz v. United States, supra 389 U.S. at 351, 88 S.Ct 507. Numerous cases have held that police may obtain a plain view of evidence through an uncovered window even where the use of binoculars was necessary or where they stood on a ladder on nearby property to gain the view. State v. Manly, 85 Wash.2d 120, 530 P.2d 306 (Sup.Ct. 1975); Commonwealth v. Hernley, 216 *304 Pa.Super. 177, 263 A.2d 904 (Super.Ct. 1970), cert. den. 401 U.S. 914, 91 S.Ct. 886, 27 L.Ed.2d 813 (1971). On the other hand, where police take up positions on an individual's property in order to make observations through his windows, the fruits of the observations are more frequently suppressed. Lorenzana v. Superior Court, 9 Cal.3d 626, 108 Cal. Rptr. 585, 511 P.2d 33 (Sup.Ct. 1973); Commonwealth v. Soychak, 221 Pa.Super. 458, 289 A.2d 119 (Super.Ct. 1972). However, police may enter upon portions of private property normally open to the public, such as a front porch, and attain a plain view observation through a window. United States v. Hersh, 464 F.2d 228 (9 Cir.), cert. den. 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 301 (1972).
The plain view doctrine is also applicable to observations from hallways in apartment buildings and hotels because police generally have a right to be in those areas. State v. Smith, 37 N.J. 481, 496 (1962); State v. Jordan, 115 N.J. Super. 73, 75 (App.Div.), certif. den. 59 N.J. 293 (1971). A fire escape is similar to a hallway in that both are passageways maintained by the landlord and available to all occupants of the building. However, a hallway is the normal means of ingress and egress while a fire escape is intended to be used only in emergency situations. An apartment dweller certainly would consider seeing a police officer, or any person, on his fire escape to be a far more startling event than seeing that same person in a common hallway. Consequently, hallway cases cannot be solely relied upon in reaching a determination of whether defendant's reasonable expectation of privacy has been violated.
Although the previously cited New York fire escape cases applied the curtilage doctrine, which is here held not applicable, such cases remain helpful because of certain factors considered by the courts. Terrell, supra, held that "the observations surreptitiously made by the police from the fire escape which created the probable cause were made in the course of a trespass and were consequently illegal." 53 Misc.2d at 43, 277 N.Y.S.2d at 938. The court rejected the analogy with common hallways, *305 and supported the contention that a fire escape was an integral part of an apartment by citing the requirements of the New York Multiple Dwelling Law. Fire escapes are similarly mandated by the Jersey City Municipal Code, § 13-41. See also: N.J.S.A. 55:13A-7.
In both Hailstock and Clarke, supra, seizures after plain view from fire escapes were upheld where landlords of the apartment buildings had provided the initial tips to police. This removed any element of trespass in the police actions. No such landlord tip is involved in the present case, although the concept of trespass should not be determinative of the scope of expectation of privacy. Cohen v. Superior Court, supra. See United States v. Conti, 361 F.2d 153, 157 (2 Cir.1966), vacated on other grounds 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968).
In Cohen the California court remanded the matter with directions to hold an evidentiary hearing on whether the fire escape plain view constituted an unreasonable invasion of privacy. The trial court was directed to consider, among other matters, the extent of any nonemergency use of the fire escape and whether the plain view could have been obtained without wandering from the normal escape route of the fire escape. Likewise, the Florida appellate court in Clarke, supra, held that the apartment occupants had no reasonable expectation of privacy with respect to what they did within "easy" view of a person on the fire escape. 242 So.2d at 794. Therefore, both Cohen and Clarke recognize that the particular position of the police officer on the fire escape is a factor in determining if a reasonable expectation of privacy has been violated.
Under the circumstances presented in this case the police violated defendant's reasonable expectation of privacy. Even assuming that the window was uncovered, which is denied by defendant, there still existed an expectation of privacy. See State v. Katz, supra 389 U.S. at 361, 88 S.Ct. 507 (Harlan, J., concurring). The window was some eight feet from the fire *306 escape, well out of the view of anyone engaged in normal use of the fire escape. The officers admitted that they went to the fire escape in order to look through defendant's window. They did not claim to have gone there to prevent defendant from fleeing or for any other legitimate police purpose.
The essence of the Fourth Amendment is to shield the individual from unwarranted intrusion into his privacy. Jones v. United States, 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). The warrant requirement must not be regarded as a mere formality but as a formidable barrier to officers thrusting themselves into homes where persons have a right to "reasonable security and freedom from surveillance." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). The apartment in question was defendant's home, and as such it must be accorded the full panoply of protection afforded by the Constitution. See State v. Seiss, 168 N.J. Super. 269 (App.Div. 1979). Accordingly, the plain view doctrine is inapplicable here because the officers did not have a right to be in a position to make observations that violated defendant's reasonable expectation of privacy.
Further, the court is satisfied that the State has not demonstrated that defendant knowingly and voluntarily consented to the search. State v. Johnson, 68 N.J. 349, 353-354 (1975). The police officers themselves testified that defendant was physically seized and pushed against a wall immediately upon leaving his apartment. The consent form certainly was not signed prior to the search, and it probably was not signed until later at the police precinct. Defendant, of course, contends that he never gave verbal consent for the police to enter his apartment. If defendant did give verbal consent, the totality of the circumstances clearly suggests duress. Id. at 352. A signed consent form may, in certain circumstances, be some evidence of voluntary consent despite the untimely signing of it, but the *307 court here finds its belated signing insufficient to overcome other credible evidence of the existence of duress.
Having determined that the initial plain view observation was improper, the court need not determine the issue of exigent circumstances or whether the scope of the search was excessive.
For the foregoing reasons the motion to suppress the evidence is granted.